IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | In Chapter 11 |
| | ) | Case No. 09 B 46644 |
| CICCONE FOOD PRODUCTS, INC., | ) | Honorable A. Benjamin Goldgar |
| | ) | |
| Debtor-In-Possession | ) | |
| | ) | |

FINAL
AGREED ORDER AUTHORIZING USE OF CASH COLLATERAL RE:
BELONGING TO ASSOCIATED BANK

This cause coming on to be heard for hearing upon the Debtor's Motion for entry of a Final Order Permitting Debtor to Use Cash Collateral Belonging to Associated Bank, due notice having been given to all those entitled thereto, and the Court being fully advised in the premises, Ciccone Food Products, Inc. ("Debtor") and Associated Bank ("Lender") stipulate as follows:

1. On December 10, 2009, Debtor filed a voluntary case under Chapter 11 of Title 11 of the United States Code ("Bankruptcy Code").

2. Debtor provides food distribution services.

3. The Debtor continues to operate its business and manage its property as debtor-in-possession pursuant to sections §§1107(a) and 1109 of the Bankruptcy Code.

4. No creditor's committee has been appointed in these cases. No trustee has been appointed.

5. This Court has jurisdiction over this Application pursuant to 28 U.S.C. §157 and §1334. Venue is proper pursuant to 28 U.S.C. §§1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. §157(b).

6. On or about March 29, 2007, Debtor executed a promissory note in the amount of $396,000.00 in favor of Associated Bank, all as is more fully set forth on Exhibit 1 attached

Court to utilize the cash collateral pursuant to the provisions of Section 363(c)(2)(B) of the Bankruptcy Code. A statement showing Debtor's anticipated expenses through for a 13 week period beginning January 4, 2010 is attached hereto as Exhibit 5.

10. The Debtor is unable, pursuant to Section 364 of the Bankruptcy Code, to obtain unsecured credit.

11. In order to prevent a severe disruption in the operation of their business, which would threaten the continuation of the Chapter 11 case and diminish the chances for a successful reorganization to the detriment of the Debtor and the creditors of this estate, the Debtor seeks authority to use the cash collateral in which Lender asserts a pre-petition security interest on an interim basis without prejudice to the Debtor or Lender.

12. Lender has indicated a willingness to consent to the Debtor's use of cash collateral generated from the Collateral provided that Lender is granted replacement liens, excluding avoidance actions under 11 U.S.C. Sections 510 and 544 through 551, if any, upon the assets in Debtor's possession subsequent to the filing of the Chapter 11 petition to the extent of the collateral diminished, subject to verification of the extent and validity of the liens. In addition, as adequate protection, Debtor proposes to make a monthly adequate protection payment to Lender in the amount of $5,000.00 beginning on January 15, 2010 and each month thereafter on the 15th of the month [until] (a) confirmation of a plan of reorganization; (b) the conversion of the case to a case under Chapter 7 of the Bankruptcy Code; (c) dismissal of this case; or (d) further order of this Court, whichever shall occur first. The payment to Lender is without prejudice to any parties' right to assert how such payment shall be applied by Lender.

3

hereto. The terms of the promissory note have been extended from time to time as is more fully set forth in Group Exhibit 2 attached hereto. Concurrently, Debtor executed a security agreement in favor of Associated Bank in which Debtor granted Associated Bank a security interest in all of its assets, including accounts receivable. Associated Bank perfected its security interest by filing a UCC-1 form with the Secretary of State of Illinois. Debtor believes that the balance due on this note is approximately $244,216.00.

7. On or about June 30, 2008, Debtor executed a promissory note in the amount of $2,200,000.00 in favor of Associated Bank, all as is more fully set forth on Exhibit 3 attached hereto. Concurrently, Debtor executed a security agreement in favor of Associated Bank in which Debtor granted Associated Bank a security interest in all of its assets, including accounts receivable. The terms of the promissory note have been extended from time to time as is more fully set forth in Group Exhibit 4 attached hereto. Debtor believes that the balance due on this note is approximately $2,200,000.00.

8. The Loan is secured by a valid and perfected blanket first priority lien and security interest upon the Debtor's business assets and personal property, including without limitation, accounts receivable ("Collateral"). Lender perfected its security interest by the filing of UCC-1 Financing Statements in the Office of the Illinois Secretary of State on or about April 16, 2007 and November 29, 2007.

9. The monies collected by the Debtor in connection with the Collateral and used by the Debtor are subject to the Lender's security interest and rights of Lender and are cash collateral as that term is defined by 11 U.S.C. Section 363(a), subject to the validity of such security interests. The Debtor requires the use of the cash collateral and requests authorization of this

IT IS HEREBY ORDERED THAT:

a) The paragraphs contained in the preamble to this Order are incorporated herein by this reference and the Debtor and Lender consent and stipulate to the entry of this Order.

b) Debtor is hereby authorized to use Lender's cash collateral and approval pursuant to Section 363(c) of the Bankruptcy Code provided until (i) confirmation of a plan of reorganization; (ii) the conversion of the case to a case under Chapter 7 of the Bankruptcy Code; (iii) dismissal of this case; or (iv) further order of this Court, whichever shall occur first.

c) Cash collateral shall not be used for expenses other than those post-petition obligations on the budget, plus no more than ten percent (10%) of the total proposed expenditures except if otherwise agreed by the Lender, a copy of which is attached hereto as Exhibit "A", and (ii) no payroll payments shall be made without simultaneous tax deposits being made in an amount equal to the applicable withholding and social security taxes for each employee.

d) Except as otherwise provided in this Order, Debtor shall use the cash collateral solely for payment of its post-petition obligations and indebtedness in the ordinary course of its business operations, unless otherwise ordered by the Court after timely written notice to the Lender.

e) Debtor shall deposit all monies collected in connection with the Collateral, whether generated pre-petition, or post-petition in its Debtor in Possession account at Lender.

f) Lender shall have no obligation to disburse monies from the Debtor In Possession account if the effect of any such disbursement would be to create an overdraft in the Debtor In Possession account.

g) If any or all of the provisions of this Order are hereafter modified, vacated or stayed by subsequent order of this Court, such stay, modification or vacation shall not affect: (i) the validity of any debt to Lender incurred pursuant to this Order and which is incurred prior to the effective date of such stay, modification or vacation; (ii) the validity and enforceability of any lien or priority authorized hereby with respect to any such debt to Lender; and (iii) the conduct of Lender with respect to the rights granted to Lender in this Order and the Loan Documents prior to the effective date of such stay, modification or vacation. Notwithstanding such stay, modification or vacation, all liabilities owed to Lender by Debtor pursuant to this Order prior to the effective date of such modification, stay or vacation, to or for the benefit of Debtor shall be governed in all respects by the original provisions of this Order and Lender shall be entitled to all of the rights, privileges and benefits, including the security interest in the priority granted herein, with respect to all such liabilities and the course of conduct established in connection therewith.

h) Debtor is hereby ordered and directed to insure the Collateral against risk of loss, damage and destruction for the full replacement value thereof with an insurance company acceptable to Lender and with loss payable to Lender and provide evidence of same to Lender.

i) Lender shall have the right to inspect the premises, property, assets and collateral of the Debtor, and conduct audits and inspections of the books and records of the Debtor during regular business hours upon reasonable advance notice.

j) This Order is without prejudice to the rights of Lender to receive any pre-petition or post-petition payments due Lender or to seek modification of the terms hereof at any time upon reasonable notice to all parties in interest, and subject to the rights of any party to object thereto.

k)  The Debtor and Lender agree that this Agreed Order shall in no way prejudice any party's rights, including, but not limited to the rights of the Lender, at any time to seek relief from the automatic stay on any legal or equitable grounds (including the absence of adequate protection) and, in the event of any default by the Debtor pursuant to this Agreed Order, to seek an order prohibiting the Debtor from using the Collateral or vacating, modifying or terminating this Agreed Order.

l)  The occurrence of any one or more of the following shall constitute an event of default:

(1)  this Agreed Order is stayed, reversed, vacated or modified on appeal or shall cease to be in full force and effect;

(2)  the material failure by the Debtor to perform any of its obligations under this Agreed Order and failure to cure the default within ten (10) days after receipt of written notice of the default;

(3)  the conversion of the Debtor's Chapter 11 case to a case under Chapter 7 of the Bankruptcy Code;

(4)  the appointment of a Chapter 11 Trustee; or

(5)  the dismissal of the Debtor's bankruptcy case.

m)  Upon Lender's claim that the Debtor has failed to perform in accordance with the terms of this Order, the Debtor's right to use of Cash Collateral pursuant to this Agreed Order shall terminate if Debtor fails to cure the default after ten (10) day written notice to the Debtor and its counsel.

n)  Upon a default, Lender may petition the Bankruptcy Court for relief from the

automatic stay to exercise any and all rights and remedies it may have with respect to the Collateral or for other appropriate relief.

o) Debtor's authorization for the use of Cash Collateral pursuant to this Agreed Order shall terminate on the earlier of (i) the entry of a Court order vacating this Agreed Order; or (ii) the Effective Date under the Plan of Reorganization to be proposed by the Debtor and confirmed by final order of the Bankruptcy Court; (iii) the occurrence of an event of default herein; (iv) the conversion of this case to one under Chapter 7; or (v) such later date as Lender or the Debtor may hereafter specify in writing.

p) Nothing in this Order shall in any way restrict the scope or priority of Lender's pre-petition liens, security interests or claims.

AGREED:

CICCONE FOODS, INC.

By: _____
One of its Attorneys

Date: 1/20/2010

ASSOCIATED BANK

By: _____
One of its Attorneys

ENTER: _____
Bankruptcy Judge    20 JAN 2010

7

Ciccone Food Products, Inc.
13 Week Cash Flows
As of January 11, 2010

| | ESTIMATE Week 1 11-Jan | Week 2 18-Jan | Week 3 25-Jan | Week 4 1-Feb | Week 5 8-Feb | Week 6 15-Feb | Week 7 22-Feb | Week 8 1-Mar | Week 9 8-Mar | Week 10 15-Mar | Week 11 22-Mar | Week 12 29-Mar | Week 13 5-Apr |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Beginning Cash Balance | 19,307 | 55,360 | 61,750 | 68,214 | 54,808 | 65,496 | 55,678 | 48,010 | 28,962 | 41,674 | 37,673 | 33,283 | 17,914 |
| Cash Receipts | $ 184,865 | $ 160,318 | $ 170,516 | $ 157,621 | $ 151,710 | $ 150,486 | $ 153,495 | $ 151,960 | $ 155,000 | $ 155,000 | $ 153,450 | $ 154,984 | $ 151,884 |
| **Cash Expenditures:** | | | | | | | | | | | | | |
| **Purchases:** | | | | | | | | | | | | | |
| F&A Dairy | 75,463 | 70,992 | 70,480 | 71,738 | 71,096 | 72,367 | 72,367 | 71,719 | 72,361 | 71,065 | 71,065 | 71,065 | 71,065 |
| Tomatoes - Stanesians & Neil Jones | 11,660 | 11,660 | 11,660 | 11,660 | 11,660 | 11,660 | 11,660 | 11,660 | 11,660 | 11,660 | 11,660 | 11,660 | 11,660 |
| Folders (Smurfit, Battaglia) | 7,166 | 7,166 | 7,166 | 7,166 | 7,166 | 7,166 | 7,166 | 7,166 | 7,166 | 7,166 | 7,166 | 7,166 | 7,166 |
| Columbus | 2,400 | 6,200 | 2,400 | 6,200 | 2,400 | 6,200 | 2,400 | 6,200 | 2,400 | 6,200 | 2,400 | 6,200 | 6,200 |
| Raw material for sausage | 5,400 | 4,900 | 5,400 | 4,900 | 5,400 | 4,900 | 5,400 | 4,900 | 5,400 | 4,900 | 5,400 | 4,900 | 4,900 |
| UNmam Company | 2,600 | 2,600 | 2,600 | 2,600 | 2,600 | 2,600 | 2,600 | 2,600 | 2,600 | 2,600 | 2,600 | 2,600 | 2,600 |
| Daily Market | 24,155 | 24,155 | 24,155 | 24,155 | 24,155 | 24,155 | 24,155 | 24,155 | 24,155 | 24,155 | 24,155 | 24,155 | 24,155 |
| Imports | - | 8,500 | - | 8,500 | - | 8,500 | - | 8,500 | - | 8,500 | - | 8,500 | 8,500 |
| TOTAL PURCHASES | 126,844 | 136,173 | 123,860 | 136,919 | 124,477 | 137,548 | 125,748 | 136,900 | 125,741 | 136,245 | 124,445 | 136,245 | 136,245 |
| Cash Flow Balance After Purchases | $ 77,328 | $ 79,506 | $ 108,405 | $ 88,917 | $ 82,042 | $ 78,434 | $ 83,426 | $ 63,071 | $ 58,220 | $ 60,429 | $ 66,677 | $ 52,022 | $ 33,553 |
| **Gross Payroll:** | | | | | | | | | | | | | |
| TOTAL PAYROLL | 12,446 | 12,024 | 12,024 | 12,024 | 12,024 | 12,024 | 12,024 | 12,024 | 12,024 | 12,024 | 12,024 | 12,024 | 12,024 |
| **Indirect Sales Expenditures:** | | | | | | | | | | | | | |
| Fuel Expense | 1,382 | 1,382 | 1,382 | 1,382 | 1,382 | 1,382 | 1,382 | 1,382 | 1,382 | 1,382 | 1,382 | 1,382 | 1,382 |
| Truck Maintenance | 1,200 | | 800 | | 1,200 | | 800 | | 1,200 | | 800 | | |
| Aramark Uniform | 240 | 240 | 240 | 240 | 240 | 240 | 240 | 240 | 240 | 240 | 240 | 240 | 240 |
| Salesmen Expenses | 1,200 | | 1,200 | | 1,200 | | 1,200 | | 1,200 | | 1,200 | | 1,200 |
| TOTAL INDIRECT SALES | 4,022 | 1,622 | 3,622 | 1,622 | 4,022 | 1,622 | 3,622 | 1,622 | 4,022 | 1,622 | 3,622 | 1,622 | 2,822 |
| **Overhead:** | | | | | | | | | | | | | |
| ComEd | | | 4,600 | | | | 4,600 | | | | 4,600 | | |
| Gas & Water & Garbage | | | 825 | | | | 2,847 | | | | 825 | | |
| Telephone & Other Office Exp | 500 | 1,000 | 2,500 | - | 500 | 1,000 | 2,500 | 500 | - | 1,000 | 2,500 | 500 | 500 |
| Insurance - General | | 3,110 | 3,110 | | | 3,110 | 3,110 | | | 3,110 | 3,110 | | |
| Insurance - Health | | | 8,655 | | | | 6,713 | | | | 6,713 | | |
| US Trustee Payment | | | 4,875 | | | | | | | | | | |
| Note Payments | 5,000 | | | | | 5,000 | | | | 5,000 | | | |
| Rent (IRB Payments) | | | | 19,963 | | | | 19,963 | | | | 19,963 | |
| TOTAL OVERHEAD | 5,500 | 4,110 | 24,545 | 19,963 | 500 | 9,110 | 19,770 | 20,463 | 500 | 9,110 | 17,748 | 20,463 | 500 |
| TOTAL CASH (DEFICIT) | $ 55,360 | $ 61,750 | $ 68,214 | $ 54,808 | $ 65,496 | $ 55,678 | $ 48,010 | $ 28,962 | $ 41,674 | $ 37,673 | $ 33,283 | $ 17,914 | $ 18,207 |